IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED GOVERNMENT SECURITY OFFICERS OF AMERICA INTERNATIONAL UNION and its Local Unions 12, 17 and 18,<br>　　　　　　　　　Plaintiffs<br><br>　　　v.<br><br>EXELON GENERATION COMPANY, LLC and EXELON NUCLEAR SECURITY, LLC,<br>　　　　　　　　　Defendants | No. 1:08cv1787<br><br>(Judge Munley) |

## MEMORANDUM

Before the court for disposition are the defendants' motion to dismiss or in the alternative, for summary judgment and the plaintiffs' cross-motion for summary judgment. The matters have been fully briefed and are ripe for disposition.

**Background**

Defendant Exelon Generation Company, LLC (hereinafter "Exelon" or "defendant") operates twelve (12) nuclear power plants, including three that are at issue in the instant case, Three Mile Island (hereinafter, "TMI") in Londonderry, Pennsylvania; Limerick Generating Station (hereinafter "Limerick") in Pottstown, Pennsylvania; and Oyster Creek Generating Station, (hereinafter "Oyster Creek") in Lacey Township, Pennsylvania. (Doc. 12, Defendant's Statement of Material Facts, at ¶ 1).

Wackenhut Corporation (hereinafter "Wackenhut") contracted with Exelon to provide security services at Exelon's nuclear plants including TMI, Limerick and Oyster Creek. (Id. at ¶ 2). Plaintiff United Government Security Officers of America (hereinafter "UGSOA" or "plaintiff") Local 18, Local 12 and Local 17 were the exclusive collecting bargaining

representatives for security officers employed by Wackenhut and working at Exelon's TMI, Limerick and Oyster Creek facilities, respectively. (Id. at ¶ 3). Wackenhut was a party to collective bargaining agreements (hereinafter "CBAs") with plaintiffs covering the security personnel for the three nuclear power stations. (Id. at ¶ 4). The CBAs all provided that disputes regarding the CBAs would be resolved through a grievance procedure and final and binding arbitration if necessary. (Id. at ¶ 5).

In 2007, Exelon decided to terminate its contracts Wackenhut and provide security services through a new subsidiary, Exelon Nuclear Security, LLC. Exelon negotiated with UGSOA Locals 18, 12 and 17 and entered into new CBAs with them. (Id. at ¶ ¶ 14, 29 and 40). Wackenhut terminated the employment of all its employees working at the stations prior to the date that Exelon Nuclear Security began to provide security for the power plants. Exelon hired most of the security officers itself, but did not hire some of them.[1]

Plaintiff UGSOA filed grievances with Exelon Nuclear Security for the employees that Wackenhut terminated but Exelon did not hire. Exelon refuses to participate in the grievance procedure/arbitration with regard to the grievances brought by these former Wackenhut employees. Thus, plaintiff filed the instant complaint. The complaint contains a count for breach of contract in violation of 29 U.S.C. § 185 and a count for declaratory relief and damages for breach of collective bargaining agreement. Defendant filed a motion to dismiss or, in the alternative, for

---

[1] Exelon hired 116 of 128 former Wackenhut security officers at TMI; 94 of 104 at Limerick; and 116 of 130 at Oyster Creek. (Doc. 24-2, Affidavit of Larry Ferris, Director of Nuclear Regulatory Commission Division of the UGSOA International Union, ¶ 7).

2

summary judgment, and the plaintiff filed a cross-motion for summary judgment, bringing the case to its present posture.

**Jurisdiction**

As this case is brought pursuant to Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a), this court has jurisdiction over the instant case pursuant to 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.") and § 1337 (The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies[.]").

**Standard of review**

The defendants have filed a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure or, in the alternative, a motion for summary judgment. The plaintiffs filed a cross-motion for summary judgment. Because the facts are generally not in dispute and both parties agree that summary judgment is appropriate at this stage, we will apply the summary judgment standard.

Granting summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Knabe v. Boury, 114 F.3d 407, 410 n.4 (3d Cir. 1997) (citing FED. R. CIV. P. 56(c)). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be

3

no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion. Int'l Raw Mat., Ltd. v. Stauffer Chem. Co., 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party. Anderson, 477 U.S. at 248 (1986). A fact is material if it might affect the outcome of the suit under the governing law. Id. Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. Celotex v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies its burden, the burden shifts to the non-moving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. Id. at 324.

**Discussion**

The issue in the instant case is whether an employer, the defendants, must arbitrate grievances under CBAs between the plaintiffs and a predecessor employer. Defendants move for dismissal/summary judgment because they were not signatories to the original CBAs, they refused to be bound by those agreements and, and entered into new CBAs with plaintiffs. Defendants assert that this case is controlled by the Third Circuit Court of Appeals decision in AmeriSteel Corp. v. Int'l Brotherhood of

Teamsters, 267 F.3d 264 (3d Cir. 2001), which held that a successor employer is not bound by a predecessor's CBA unless it has adopted the CBA or is deemed an alter ego. In the instant case, defendants argue that they did not adopt the Wackenhut CBAs and in fact negotiated new CBAs and no issue exists as to whether they are the alter ego of Wackenhut. Therefore, they are not bound by Wackenhut's CBAs. After a careful review, we agree.

In reaching its decision in AmeriSteel, the Third Circuit "navigate[d] the treacherous waters of the Supreme Court's labor law successorship doctrine[.]" Id. at 267. The AmeriSteel court analyzed three important Supreme Court cases dealing with labor law, John Wiley & Sons v. Livingston, 376 U.S. 543 (1964); NLRB v. Burns Int'l Sec. Servs, Inc., 406 U.S. 272 (1972); and Howard Johnson Co. v. Hotel and Rest. Employees, 417 U.S. 249 (1974).

In AmeriSteel, a steel manufacturer and seller purchased an existing steel plant and expressly refused in the purchase agreement to be bound by the collective bargaining agreement between the predecessor business and the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of American union. AmeriSteel, 267 F.3d at 265-66. AmeriSteel hired many of its predecessor's employees. Id. at 266. The union filed a grievance challenging changes that would occur in working conditions at the plant when the purchase agreement was consummated. Id. AmeriSteel filed suit against the union seeking an injunction to enjoin arbitration of the matter. Id. The district court found that the pre-existing CBA did not bind AmeriSteel because AmeriSteel was not the "alter ego" of the predecessor business nor had AmeriSteel agreed

to abide by the CBA. The Third Circuit affirmed. Relying on Burns supra the court indicated that "a successor employer cannot be bound against its will by the substantive provisions of its predecessor's CBA." Id. at 273; see also Fall River Dyeing & Finishing Corp. v. NLRB, 482 U.S. 27 (1987) ("the successor . . . is not bound by substantive provisions of the predecessor's collective-bargaining agreement.") quoted in AmeriSteel, 267 F.3d at 273.

AmeriSteel further notes that its decision "is supported by the decisions of our sister circuit courts of appeals . . . every one of our sister circuits that has addressed the issue has concluded that an unconsenting successor employer cannot be bound by the substantive terms of an existing CBA." Id. at 275. Accordingly, a successor corporation is not bound by the substantive terms of its predecessor's CBA unless it is the alter ego of the predecessor or the successor has assumed the obligations of the predecessor's CBA.

In the instant case, there is no indication that Exelon is the alter ego of the predecessor, Wackenhut, or that Exelon has assumed the obligations of the Wackenhut's CBAs.² In fact, it appears uncontested that

---

²

> Under the "alter ego" doctrine, a successor employer "is subject to all the legal and contractual obligations of the predecessor" when the successor is a mere "alter ego" of the predecessor, or nothing more than "a disguised continuance of the old employer." NLRB v. Omnitest Inspection Servs., 937 F.2d 112, 118 (3d Cir. 1991). An "alter ego" relationship exists "when there is a mere technical change in the structure or identity of the old employing entity, frequently to avoid the effect of the labor laws, without any substantial change in its

6

Exelon negotiated and entered into its own CBAs. Accordingly, based upon the precedent provided by the Third Circuit, Exelon is not bound by the CBAs entered into by its predecessor, Wackenhut, and summary judgment for the defendants is appropriate.[3]

---

ownership or management." Id. AmeriSteel, 267 F.3d at n.1, 267.

[3]The plaintiffs argues that the legal analysis of the majority opinion in AmeriSteel is unsound and that the analysis provided in the dissent of that case is more in line with Supreme Court precedent. (See, e.g., Doc. 30, Plaintiffs' reply brief at 2; Doc. 23, Plaintiff's Brief in Support at 11). As a district court, however, we must apply the law as provided by the majority opinion in AmeriSteel. Plaintiffs also rely on American Bell, Inc. v. Fed. Of Telephone Workers of Pa., 736 F.2d 879 (3d Cir. 1984). Reliance on this case, however, is unconvincing because it dealt with the issue of protecting the rights of employers of a former company employed by the successor company. In the instant case, the employees the former company were never hired by the successor company. Id. at 882-83. Moreover, the Third Circuit indicated in AmeriSteel that American Bell was of limited utility in deciding issue involving the successorship doctrine because the American Bell case decided that the successorship doctrine did not apply in that case. AmeriSteel, 267 F.3d at n.1, 267.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED GOVERNMENT SECURITY OFFICERS OF AMERICA INTERNATIONAL UNION and its Local Unions 12, 17 and 18, <br> **Plaintiffs** <br><br> v. <br><br> EXELON GENERATION COMPANY, LLC and EXELON NUCLEAR SECURITY, LLC, <br> **Defendants** | No. 1:08cv1787 <br><br> (Judge Munley) |

## ORDER

    **AND NOW**, to wit, this 30th day of September 2009, the defendants' motion to dismiss or, in the alternative, motion for summary judgment (Doc. 11) is **GRANTED** and summary judgment is granted to the defendants.

    The plaintiffs' cross-motion for summary judgment (Doc. 22) is **DENIED**.

    The Clerk of Court is directed to close this case.

                                               **BY THE COURT:**

                                               **s/ James M. Munley**
                                             **JUDGE JAMES M. MUNLEY**
                                             **United States District Court**